**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GRADY JACKSON,** )<br>      **Plaintiff** )<br> ) | **C.A. No. 06-88 Erie** |
|       v.    ) ) | **District Judge McLaughlin** |
| **UNITED STATES OF AMERICA, et al.,** )<br>      **Defendants.** ) | **Magistrate Judge Baxter** |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [Document # 24], be granted in part and denied in part.

**II.    REPORT**

   **A.    Procedural History**

On April 18, 2006, Plaintiff Grady Jackson, an inmate incarcerated at the Federal Correctional Institution at McKean, Pennsylvania ("FCI-McKean"), filed this *pro se* civil rights action pursuant to Bivens v. Six Unnamed Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 2671, et seq. Plaintiff subsequently amended his Complaint on or about August 29, 2006. [Document ## 18, 38].[1]
Named as Defendants are: United States of America ("United States"); Eric Asp, a Physician's

---

[1] Plaintiff filed a motion to amend/correct complaint on August 29, 2006, with the proposed first amended complaint attached as an exhibit. [Document # 18]. This Court issued an Order requiring Defendants to file a response to Plaintiff's motion by October 6, 2006; however, rather than responding to the motion's request to amend the complaint, Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment in direct response to the proposed first amended complaint attached as an exhibit to the motion. [Document # 24]. This procedural error was not immediately noted by this Court, but was subsequently corrected by this Court's Order dated January 17, 2007, granting Plaintiff's motion to amend/correct Complaint and ordering that the attached proposed complaint be docketed as Plaintiff's First Amended Complaint. [Document # 37}. As a result, Plaintiff's First Amended Complaint, to which Defendants' pending motion relates, was not actually filed of record until January 17, 2007. [Document # 38].

Assistant at FCI-McKean ("Asp"); Robert Piotrowski, a Physician's Assistant at FCI-McKean ("Piotrowski"); Judy Glenn, a nurse at FCI-McKean ("Glenn"); and Violet Geza, a pharmacist at FCI-McKean ("Geza")

Plaintiff alleges that: (i) his rights under the eighth amendment to the United States Constitution have been violated as a result of the individual Defendants' deliberate indifference to his serious medical needs (Amended Complaint at ¶ 22); (ii) Defendants were medically negligent in their treatment of his back and hip (Id. at 26); and (iii) Defendants were negligent "in failing to insure that the top bunk in the S.H.U. can be accessed in a safe and secure manner by utilizing a ladder." (Ids. at ¶ 25).  As a result of these claims, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

Defendants have filed a motion to dismiss, or in the alternative, motion for summary judgment [Document # 24], arguing that:  (i) Plaintiff has failed to state a Bivens claim upon which relief may be granted with regard to Defendants' treatment of his back and hip; (ii) Plaintiff's FTCA claim regarding the failure to provide bunk bed ladders is barred by the FTCA's discretionary function exception and, therefore, this Court lacks subject matter jurisdiction to hear such claim; (iii) Plaintiff's FTCA claim of medical negligence should be dismissed for Plaintiff's failure to exhaust his administrative tort remedies; and (iv) Plaintiff's claims against the individual Defendants in their official capacities are barred by the doctrine of sovereign immunity.

Plaintiff filed a brief in opposition to Defendants' motion [Document # 41], arguing that: (i) he has sufficiently stated a claim of deliberate indifference; and (ii) the FTCA's discretionary function exception does not apply to the failure to provide bunk bed ladders.  However, Plaintiff has conceded that he failed to exhaust his administrative tort remedies with regard to his medical negligence claim, and he conceded further that his claims against the individual Defendants in their official capacities are barred by the doctrine of sovereign immunity.  As a result, these claims should be dismissed and will not be addressed any further.

Defendants has filed a reply brief in response to Plaintiff's opposition [Document # 42], discounting Plaintiff's arguments, and Plaintiff has filed a brief in response to Defendants'

reply. [Document # 45]. This matter is now ripe for consideration.

### B.      Factual History

Plaintiff describes himself as a "very large man, standing 6'3" in height and weighing 290 pounds." (Document # 38, Amended Complaint, at Section IV, ¶1). On May 9, 2005, Plaintiff was placed in FCI-McKean's Special Housing Unit ("SHU") while he was being investigated for a disciplinary infraction. (Id.). He was assigned to the upper bunk of the bunk bed in his SHU cell. (Id. at Section IV, ¶ 2). The bunk bed was not equipped with a ladder to access the upper bunk. (Id. at Section IV, ¶ 3).

On May 14, 2005, while attempting to access the upper bunk, Plaintiff fell and hit his back and hip on a metal stool, which was attached to a metal desk located in the cell. (Id. at Section IV, ¶ 4). As a result, Plaintiff alleges that he "sustained injuries to his back and hip, which is causing severe pain and suffering," and allegedly appear to be permanent. (Id. at Section IV, ¶ 5).

Plaintiff claims that he spoke with Defendant Asp on May 15, 2005, about the incident that took place the day before, at which time Defendant Asp allegedly informed Plaintiff that no doctors were on duty, because it was Sunday, and that Plaintiff should seek medical attention the next day. (Id. at Section IV, ¶ 7). Plaintiff then claims that he spoke about the incident to Defendant Glenn on May 16, 2005, at which time Defendant Glenn allegedly ordered a prescription of Motrin for Plaintiff. (Id. at Section IV, ¶ 8). The next day, Plaintiff contends that he asked Defendant Asp if Defendant Glenn had ordered his prescription, but Defendant Asp responded that he knew nothing about the order. (Id. at Section IV, ¶ 9).

Contrary to Plaintiff's allegations, Plaintiff's medical records indicate that he first reported the incident to Defendant Glenn on May 18, 2005, at which time he requested pain medication. Defendant Glenn assessed Plaintiff with lower back pain and prescribed Motrin. (See Document # 25, Defendants' Brief, Exhibit D at p. 10). Later the same day, Plaintiff was examined by Defendant Asp, who completed an Injury Assessment form, noting that Plaintiff walked well and was able to move normally. (Id. at p. 12). Defendant Asp assessed Plaintiff

3

with "back pain [with] no apparent injuries," and recommended that Plaintiff apply a warm compress to the injured area. (Id.).

On May 19, 2005, Plaintiff claims that, despite "numerous inquiries," no one from FCI-McKean's medical staff had yet provided him with the pain medication prescribed by Defendant Glenn. (Document # 38, Amended Complaint, at Section IV, ¶ 13). On May 20, 2005, Plaintiff alleges that he asked both Defendant Piotrowski and an emergency medical technician at FCI-McKean about the status of his pain medication, in response to which each responded that he would check into the matter. (Id. at Section IV, ¶¶ 14, 15). Nevertheless, no pain medication was provided to Plaintiff prior to his release from the SHU on May 23, 2005. (Id. at Section IV, ¶¶ 16, 17).

On May 24, 2005, Plaintiff was seen by medical staff and received his pain medication. (Id. at ¶ 18). Plaintiff alleges that he also requested an x-ray of his lower back, but his request was denied. (Id. at ¶ 19).[2]

### C.    Standards of Review
#### 1.    Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a

---

[2] Plaintiff's medical records indicate that an x-ray of Plaintiff's lumbar spine was subsequently taken on November 10, 2005, which revealed no fractures, dislocations, or bony destructive processes. (Document # 25, Exhibit D at ¶ 4i and attached medical records at p. 26).

claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974). However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997). Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted. See Swierkiewicz.

### 2. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential

5

fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 3.    *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite

proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### D.     Discussion
####      1.     Eighth Amendment Claim

Plaintiff claims that the individual Defendants acted with deliberate indifference in violation of his Eighth Amendment rights by "arbitrarily, capriciously, and maliciously display[ing] their willingness to delay and deny the Plaintiff medical assistance and attention" for the injuries he allegedly sustained to his lower back and hip. (Document # 38, Amended Complaint, Section IV, ¶ 22). In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[3] involves the "unnecessary and wanton

---

[3] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

In this case, Plaintiff's primary complaint is that Defendants failed to provide him with pain medication for a period of 10 days after he sustained injuries to his low back and hip as a result of his fall from the upper bunk in his SHU cell. Although the medical records indicate that Defendant Glenn prescribed Motrin for Plaintiff's pain on May 18, 2005, it is clear from the record that the medication was not given to Plaintiff until after Plaintiff was released from the SHU on May 24, 2005. Defendants respond to this claim by indicating that Plaintiff was already taking a prescription pain medication, Piroxicam, for an unrelated ailment, thus implying that his pain needs were being met. (Document # 25, Defendants' Brief, at p. 15).[4] However, it is presumed that this fact was already known to Defendant Glenn when she examined Plaintiff on May 18, 2005; yet, she still felt it was necessary to prescribe Motrin for Plaintiff's low back pain. Moreover, there is no indication in the medical record that Plaintiff was informed that his existing pain medication would be sufficient to meet his pain needs. In fact, Plaintiff affirmatively states that he was never so informed. (Document # 41, Plaintiff's

---

[4] Defendants spend a great deal of time detailing the treatment Plaintiff received for his low back after he was released from the SHU in an effort to show that they were anything but indifferent to Plaintiff's medical needs; however, Plaintiff's claim is confined to the ten day period after his fall, during which time he was housed in the SHU. Thus, the majority of Defendants' argument in this regard is not relevant to the primary issue in this case.

Reply Brief, at p. 9).[5]

In short, the record supports Plaintiff's assertion that Defendants' failed to administer pain medication for Plaintiff's low back pain for a period of 10 days after his fall from the upper bunk. Whether this delay was attributable to legitimate medical reasons, excusable neglect, or deliberate indifference cannot be definitively ascertained from the medical record and, thus, a material issue of fact still exists. As a result, Defendants' summary judgment motion should be denied with regard to Plaintiff's Eighth Amendment claim.

### D.     FTCA Claim - Discretionary Function Exception

Defendant moves to dismiss Plaintiff's FTCA claim, alleging Defendants' negligence for failing to provide a ladder with which to access the upper bunk in his SHU cell, arguing that such claim is excluded from the FTCA's waiver of sovereign immunity by the discretionary function exception.

While the FTCA generally grants jurisdiction to the tort plaintiff, there are some notable exceptions to the Act that put certain actions by government employees beyond the jurisdiction of the federal courts. One such exception that the Defendants raise here is the discretionary function exception. Complaints that fall within the discretionary function exception must be dismissed for a lack of subject matter jurisdiction. Attallah v. United States, 955 F.2d 776, 783 (1st Cir. 1992).

The statute provides that the United States is immune from liability for any claim

> "based upon an act or omission of an employee of the Government exercising due care, in the execution of a statute or regulation ... or based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

28 U.S.C. § 2680 (a) (1988).   The discretionary function exception to the FTCA "marks the

---

[5] Specifically, Plaintiff asserts that "[n]either Defendant Piotrowski or [sic] Asp attempted to personally provide any form of pain medication for Plaintiff, nor did they indicate that the Piroxicam that had been prescribed to Plaintiff would adequately arrest the pain he was suffering." (Id.).

boundary between Congress's willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa Biacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). The purpose of the exception to liability is to avoid judicial second-guessing of legislative and administrative decisions that are grounded in social, economic, and political policies. United States v. Gaubert, 499 U.S. 315, 323 (1991).

The Supreme Court has provided a two-part inquiry, frequently referred to as the Berkovitz-Gaubert test, to guide the application of the discretionary function exception. Berkovitz v. United States, 486 U.S. 531 (1988); Gaubert, 499 U.S. at 322. First, a district court must determine whether the nature of the conduct involves an "element of judgment or choice." Mitchell v. United States, 225 F.3d 361, 363 (3d Cir. 2000), citing Gaubert, 499 U.S. at 322. "Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997), citing Gaubert, 499 U.S. at 322. In other words, when the conduct is specifically mandated by statute or regulation and does not provide any employee discretion, the challenged conduct is not entitled to immunity and thus, subject matter jurisdiction exists. Second, "even if the challenged conduct involves an element of judgment, the court must determine 'whether the judgment is of the kind that the discretionary function exception was designed to shield.'" Mitchell, 225 F.3d at 363, quoting Gaubert, 499 U.S. at 322-23. The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id.

The operation of a federal prison involves a wide range of social and economic considerations, with social concerns and considerations that are markedly different from the issues that arise in the operation of any other organization. Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (1977). Although the prison officials of the United States

have a statutory duty[6] to protect inmates from harm, generally decisions regarding the best way to safeguard prisoners are discretionary in nature and do not provide subject matter jurisdiction to the federal courts for negligence claims against the United States. See Castillo v. United States, 2006 WL 45554 (3d Cir. January 10, 2006) (integration plan involving two rival gangs which resulted in a melee within discretionary function exception); Cohen v. United States, 151 F.3d 1338, 1340-45 (11th Cir. 1998) (charge of negligence for improperly classifying assailant inmate at the lowest security level within discretionary function exception); Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 795-97 (8th Cir. 1998) (charges of negligence for failing to warn inmate that his youthful appearance made him vulnerable to sexual attack and failure to act on plaintiff's complaint that other inmate was staring at him in a sexual manner within the discretionary function exception); Calderon v. United States, 123 F.3d 947, 948-51 (7th Cir. 1997) (charge of negligence for ignoring repeated information about threats against plaintiff by another inmate prior to attack within discretionary function exception); and Buchanan v. United States, 915 F.2d 969 (5th Cir. 1990) (discretionary function exception applied to prisoners' FTCA claim for damages sustained while prisoners were held hostage by Cuban detainees during a prison uprising).

With regard to the first prong of the Berkovitz-Gaubert test, Defendants have submitted the Declaration of James Sherman ("Sherman"), Warden at FCI-McKean at all times relevant to this action, who states that "[t]here are no Bureau of Prison rules, regulations or policies that govern the use of ladders on bunk beds in the SHU. Such decisions are made independently by the administration at each prison." (See Sherman Declaration attached as Exhibit A to

---

[6] Title 18 U.S.C. § 4042(a)(2), (3) provides:

> The Bureau of Prisons ... shall ... provide ... for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States ... [and] provide for the protection ... of all persons charged with or convicted of offenses against the United States.

11

Document # 25, Defendants' Brief, at ¶ 4).[7]  With no statute, regulation, or policy to specifically govern the use of ladders on bunk beds, Sherman was left to exercise his own discretion to determine whether ladders should be provided for the bunk beds in FCI-McKean's SHU.  In his discretion, Sherman decided to "not add ladders to the beds for safety and security reasons." (Sherman Declaration at ¶ 5).  According to Sherman:

> If a ladder is welded to a bed, it creates a serious impediment during a forced cell move of an inmate.  Moreover, free standing ladders cannot be used because the inmates can use them as weapons, or they can break the ladders apart and use the pieces as weapons.

(Id.).  Sherman also noted that the bunk beds are made of metal, and "the railings at the end of the beds are used as ladders to access the upper bunks." (Sherman Declaration at ¶ 2).  Thus, Sherman's decision not to add ladders to the bunk beds in the SHU clearly involved an "element of judgment or choice," as there was no federal statute, regulation, or policy specifically prescribing a course of action for him to follow.  As a result, the first prong of the Berkovitz-Gaubert test is satisfied.

     Next, this Court must determine whether Sherman's judgment was the kind Congress intended to shield from liability (in other words, whether the decision is grounded in social, economic, or political policy).  Gaubert, 499 U.S. at 322-23.  It is beyond dispute that Sherman's decision not to add ladders to the bunk beds in FCI-McKean's SHU was grounded in prison and inmate safety, which is precisely the type of policy decision that is protected by the discretionary function exception.  See Whitley v. Albers, 475 U.S. 312, 321-22 (1986)("prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"); Rhodes v. Chapman, 452 U.S. 337. 349 n. 14 (1981) ("a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators"); Caudle v. United States, 1995 WL 730817 at *1-2 (7th Cir. Dec. 8, 1995)

---

[7] Sherman is currently employed by the Federal Bureau of Prisons as Senior Deputy Regional Director for the Northeast Regional Office. (Sherman Declaration at ¶ 1).

(internal prison security is left to the discretion of prison administrators and involves questions of public policy). Thus, this Court finds that the second prong of the <u>Berkovitz-Gaubert</u> test is satisfied.

Accordingly, summary judgment should be awarded to Defendants with regard to Plaintiff's claim that Defendants were negligent in failing to provide ladders for the bunk beds in FCI-McKean's SHU, as this Court lacks subject matter jurisdiction over this claim pursuant to the FTCA's discretionary function exception.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [Document # 24], be granted in part and denied in part, as follows:

1. Defendants' motion should be granted with regard to Plaintiff's FTCA claim of medical negligence, and such claim should be dismissed;

2. Defendants' motion should be granted with regard to Plaintiff's FTCA claim that Defendants were negligent in failing to provide ladders for the bunk beds in FCI-McKean's SHU, and such claim should be dismissed;

3. Defendants' motion should be granted with regard to Plaintiff's claims against the individual Defendants in their official capacities, and such claims should be dismissed; and

4. Defendants' motion should be denied with regard to Plaintiff's Eighth Amendment deliberate indifference claim, and such claim should be allowed to proceed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C)), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to

respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                                     S/Susan Paradise Baxter
                                                     SUSAN PARADISE BAXTER
                                                     Chief U.S. Magistrate Judge

Dated:  May 31, 2007

cc:      The Honorable Sean J. McLaughlin
          United States District Judge