IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRADY JACKSON,<br>        Plaintiff<br><br>        v.<br><br>UNITED STATES OF AMERICA, et al.,<br>        Defendants. | C.A. No. 06-88 Erie<br><br>District Judge McLaughlin<br>Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that Defendants' motion for summary judgment [Document # 79], be granted.

**II.    REPORT**

    **A.    Procedural History**

On April 18, 2006, Plaintiff Grady Jackson, an inmate incarcerated at the Federal Correctional Institution at McKean, Pennsylvania ("FCI-McKean"), filed this *pro se* civil rights action pursuant to Bivens v. Six Unnamed Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 2671, et seq, against the following Defendants: United States of America ("United States"); Eric Asp, a Physician's Assistant at FCI-McKean ("Asp"); Robert Piotrowski, a Physician's Assistant at FCI-McKean ("Piotrowski"); Judy Glenn, a nurse at FCI-McKean ("Glenn"); and Violet Geza, a pharmacist at FCI-McKean ("Geza"). Plaintiff subsequently amended his Complaint on or about August 29, 2006. [Document # 38].

On May 31, 2007, this Court issued a Report and Recommendation recommending, *inter alia*, the dismissal of Plaintiff's FTCA claims against the United States, and Plaintiff's Bivens claims against the individual Defendants in their official capacities. [Document # 47]. By Memorandum Order dated July 12, 2007, District Judge Sean J. McLaughlin adopted this

Court's recommendation and dismissed Plaintiff's FTCA claims and Plaintiff's claims against the individual Defendants in their official capacities. [Document # 53]. In addition, Defendant United States was dismissed from this case. (Id.).[1] As a result, the only claim remaining in this case is Plaintiff's allegation that his rights under the eighth amendment to the United States Constitution were violated as a result of the individual Defendants' deliberate indifference to his serious medical needs (Amended Complaint at ¶ 22). As relief for this claim, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

After completing discovery, Defendants have filed a motion for summary judgment [Document # 79], arguing that: (i) Defendants Glenn and Geza are Public Health Service employees and are, therefore, immune from this lawsuit under 42 U.S.C. § 233(a); and (ii) the undisputed evidence of record shows that Defendants were not deliberately indifferent to Plaintiff's medical needs. Plaintiff has filed a brief in opposition to Defendants' motion [Document # 82], arguing that there are genuine issues of material fact precluding the entry of summary judgment. Defendants have since filed a reply to Plaintiff's opposition brief, and Plaintiff has filed a reply to Defendants' reply. [Document ## 87 and 90). This matter is now ripe for consideration.

### B. Factual History

On May 9, 2005, Plaintiff was placed in FCI-McKean's Special Housing Unit ("SHU") while he was being investigated for a disciplinary infraction. (Amended Complaint at Section IV, ¶1). He was assigned to the upper bunk of the bunk bed in his SHU cell. (Id. at Section IV, ¶ 2). The bunk bed was not equipped with a ladder to access the upper bunk. (Id. at Section IV, ¶ 3).

On May 14, 2005, while attempting to access the upper bunk, Plaintiff fell and hit his back and hip on a metal stool, which was attached to a metal desk located in the cell. (Id. at

---

[1] Judge McLaughlin recently denied Plaintiff's motion to reopen his FTCA claims in this case, by Order dated August 29, 2008. [Document # 98].

Section IV, ¶ 4). As a result, Plaintiff alleges that he "sustained injuries to his back and hip, which is causing severe pain and suffering," and allegedly appear to be permanent. (Id. at Section IV, ¶ 5).

Plaintiff claims that he spoke with Defendant Asp on May 15, 2005, about the incident that took place the day before, at which time Defendant Asp allegedly informed Plaintiff that no doctors were on duty, because it was Sunday, and that Plaintiff should seek medical attention the next day. (Id. at Section IV, ¶ 7). Plaintiff then claims that he spoke about the incident to Defendant Glenn on May 16, 2005, at which time Defendant Glenn ordered a prescription of Motrin for Plaintiff. (Id. at Section IV, ¶ 8). Defendant Glenn then delivered Plaintiff's medical file, which included the prescription, to the pharmacy. (See Declaration of Judy Glenn attached as Exhibit C to Document # 80 ("Glenn Declaration"), at ¶ 5).

On May 18, 2005, Defendant Asp worked the night shift and was instructed to examine Plaintiff and complete an Injury Assessment Form. (See Declaration of Eric Asp attached as Exhibit E to Document # 80 ("Asp Declaration"), at ¶ 2). Accordingly, Defendant Asp retrieved Plaintiff's medical file from the "pharmacy shelf" in the medical records department, where medical records containing unfilled prescriptions are kept overnight. (Id at ¶ 3). Upon reviewing Plaintiff's medical file, Defendant Asp found that it contained Defendant Glenn's written prescription for Motrin. (Id. at ¶ 5). Defendant Asp then examined Plaintiff and completed an Injury Assessment form, noting that Plaintiff ambulated well, with no gait disturbance and full range of motion. (Document # 80, Exhibit F). Defendant Asp assessed Plaintiff with "back pain [with] no apparent injuries," and recommended that Plaintiff use the Motrin prescribed by Defendant Glenn and to apply a warm compress to the injured area. (Id.). After the examination, Defendant Asp returned Plaintiff's medical file, including the written prescription for Motrin, "to a shelf where information is left for Dr. Olson's review." (Asp Declaration at ¶ 8).[2] At that time, Defendant Asp believed that Dr. Olson would review the

---

[2] Dennis Olson, M.D. is the Clinical Director at FCI-McKean. (See Declaration of Dennis Olson, M.D., attached as Exhibit H to Document # 80 ("Olson Declaration"), at ¶ 1).

3

Injury Assessment Form the next day and return the medical file, including the prescription, to the pharmacy. (Id. at 11).

On May 19, 2005, Dr. Olson reviewed and signed the Injury Assessment Form prepared by Defendant Asp. (Olson Declaration at ¶ 5). Because there was no indication on the form that Plaintiff's prescription for Motrin had not been filled, Dr. Olson delivered the entire medical file, including the unfilled prescription, to the medical records department to be filed. (Id. at ¶¶ 5-6). Dr. Olson declares that, had he known the Motrin prescription had not been filled, he would have delivered the medical file to the pharmacy, so the pharmacist could fill the prescription. (Id. at ¶ 7).

On or about May 23, 2005, Defendant Geza learned that Plaintiff had asked about the status of his Motrin prescription. (See Declaration of Violette Geza attached as Exhibit G to Document # 80 ("Geza Declaration"), at ¶ 5). Because she did not possess or fill a Motrin prescription for Plaintiff, Defendant Geza retrieved Plaintiff's medical file from the medical records department and found the unfilled prescription that was written by Defendant Glenn. (Id. at ¶ 7). Defendant Geza then promptly filled the prescription and had it delivered to the SHU, where Plaintiff had been housed. (Id. at ¶ 9). However, Plaintiff had already been released from the SHU, so the prescription was sent back to the pharmacy. (See Declaration of Robert Piotrowski attached as Exhibit I to Document # 80, at ¶ 3).

On May 24, 2005, Plaintiff went to the pharmacy seeking his prescription for Motrin, at which time Defendant Piotrowski found the prescription and issued it to Plaintiff. (Id. at ¶ 4).

### C. **Standards of Review**
#### 1. **Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the

4

mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v.

5

DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D. Discussion
#### 1. Public Health Service Immunity

Under 42 U.S.C. § 233(a), employees of the Public Health Service are entitled to immunity against Bivens claims of deliberate indifference to a serious medical condition, if the injury for which compensation is sought resulted from medically-related functions performed within the scope of their office or employment. Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000); Anderson v. Bureau of Prisons, 2005 WL 2314306 at * 6 (M.D.Pa. Sept. 22, 2005). The exclusive remedy against Public Health Service employees arising from the performance of

medically-related functions within the scope of their employment is the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq. Id.

Here, the undisputed evidence establishes that Defendants Glenn and Geza are Public Health Service employees who were, at all relevant times, acting within the scope of their employment as health care professionals. (Glenn Declaration at ¶ 1; Geza Declaration at ¶ 1). As a result, Defendants Glenn and Geza are immune from Plaintiff's deliberate indifference claims and summary judgment should be entered in their favor.

### 2. Eighth Amendment Claim

Plaintiff claims that the individual Defendants acted with deliberate indifference in violation of his Eighth Amendment rights by "arbitrarily, capriciously, and maliciously display[ing] their willingness to delay and deny the Plaintiff medical assistance and attention" for the injuries he allegedly sustained to his lower back and hip. (Amended Complaint, Section IV, ¶ 22). In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[3] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the

---

[3] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

7

face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

In this case, Plaintiff's primary complaint is that Defendants failed to provide him with pain medication for a period of 10 days after he sustained injuries to his low back and hip as a result of his fall from the upper bunk in his SHU cell. Although the medical records indicate that Defendant Glenn prescribed Motrin for Plaintiff's pain on May 18, 2005, it is clear from the record that the medication was not given to Plaintiff until after Plaintiff was released from the SHU on May 24, 2005.

Nevertheless, the facts elicited from Defendants' Declarations make clear that the delay in providing Plaintiff his pain prescription was attributable to an inadvertent break in protocol within the medical department, rather than the Defendants' deliberate indifference. The version of events described by Defendants and Dr. Olson in their Declarations is uncontradicted by Plaintiff, who acknowledged during his deposition that he had "no idea" why there was a delay in getting his medication, and that he never asked any of the four Defendants for an explanation of the delay. (See relevant portions of Plaintiff's deposition transcript attached as Exhibit A to Document # 80, at pp. 62, 65, 74-75). Plaintiff simply claims that he did not receive his medication in a timely manner. This allegation, standing alone and unsupported by additional evidence of malfeasance, is insufficient to establish deliberate indifference on the part of Defendants.

Moreover, the medical record reflects that Plaintiff was, in fact, issued a prescription for Motrin by Defendant Glenn on May 18, 2005, and was thoroughly examined by Defendant Asp the same day. In addition, Defendant Asp's Injury Assessment Form was reviewed and approved the next day by FCI-McKean's Clinical Director, Dr. Olson. These facts are undisputed by Plaintiff and belie his claim that Defendants were deliberately indifferent to his medical needs. The most Plaintiff may be able to prove is that Defendants were careless, or even negligent, in their handling and processing of his pain medication. However, negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. Accordingly, summary judgment should be

8

granted in favor of Defendants and against Plaintiff on his remaining Eighth Amendment claim.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment [Document # 79], be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C)), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of some appellate rights. See, e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

  /s/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: October 9, 2008

cc:    The Honorable Sean J. McLaughlin
       United States District Judge